## Reynolds v. Harris et al.

April 18, 1944.

Garrett M. Castle for appellant.

C. B. Upton for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—
Affirming.

Appellant, Florrie Reynolds, and her first husband, appellee, Edwin Johnson, were divorced in the year 1936. The judgment awarded appellant the custody of their two children, who were at that time four and two years of age, respectively. About a year and a half after her divorce, and two years prior to her second marriage, appellant became pregnant. She thereupon requested her former husband to accept the custody and control of the children, which he did. They remained with him for the next four years. The younger child, a boy, lived in his father's home the entire period of time; the older child, a girl, lived at her father's home during vacations, but attended school in Madison County for nine months each year, during which time she lived at the home of her paternal aunt, appellee, Nora Johnson Harris, where, in addition to the ordinary education, she received vocal training. The father had the assistance of a second sister, appellee, Laura Johnson, and his second wife in the care and training of the children at his residence. The uncontradicted evidence in the case shows that the children were extremely happy with this arrangement, and were being cared for in an unusual, careful, and prudent manner. They were encouraged to, and did, attend religious services regularly; and the environments of their father's and aunt's homes had such telling effect upon the character and personality of the children as to cause the Chancellor, after privately interviewing them for over an hour, to make the following remarks:

"Whatever else may be in this case, I have found out one thing, there are two lovely children. Somebody has been doing the job away above the average, not the average by any means but away above it. They are intelligent and have been well trained and they speak better English than most of us folk, and they know a lot of things that you would be surprised. They recited for me out there. They are children anyone would be proud of.

"I have talked to them about several things and they made very intelligent answers, and they do not seem to be out of humor with anybody, or hating anybody or

disliking anybody especially. They do not seem to have any of that in their hearts."

Indeed, no objection was raised by appellant to the arrangement made by the father for a period of four years, and until she learned that he was about to be inducted into the United States Army, upon the occurrence of which, it is suggested in brief for appellees, the person having the custody and control of the children would receive the sum of $50 per month as compensation for their maintenance. Appellant's second husband is a coal miner, whose average monthly earnings for the twelve-month period preceding the time he testified were approximately $90 per month. Three of his children by a former marriage make their home with him and appellant. At the time of the trial, the oldest of these children was sixteen years of age, and had been permitted by his father and stepmother to discontinue his education and obtain a job in the coal mines, where he had been working since he was fifteen years of age; the second child, twelve years of age, had reached only the fourth grade in school; the third was only five years of age. The evidence shows that appellant's second husband at one time bore a bad reputation for engaging in the unlawful sale of intoxicating liquors, and had on one occasion been convicted of violating the law in that respect. Approximately four years after appellant relinquished custody and control of the children to her first husband, and shortly before the latter was inducted into the armed forces of the United States, she and her second husband drove to Williamsburg, which is the nearest town to the residence of the children's father. The children were encountered, and caused to enter appellant's automobile; she and her husband testifying that they did so willingly, the aunt of the children testifying that they did so unwillingly and by force applied by appellant's husband. Upon learning of the incident, the father of the children obtained a warrant for his first wife and her present husband, charging them with the crime of kidnapping; and additionally obtained an order for the delivery of the children to him. He thereupon filed a motion to redocket the divorce action, and prayed the court to award him the legal custody and control of the children. Upon the trial the court granted the prayer of the motion. No appeal was taken from this order. Shortly thereafter the father was inducted into the armed service of the United States; whereupon appellant in-

stituted this, a separate, action against both paternal aunts of the children and the latter's father, alleging that the father had delivered the children to the two aunts, contrary to the decree of the court; and asked that she be reawarded their control and custody. No summons was served on the father, but a warning order was issued and an attorney appointed to notify him of the nature and pendency of the action. The warning order attorney reported that he could not ascertain the whereabouts of the absent defendant, and it was therefore impossible to inform him of the action. With the record in that condition, another trial was had and custody of the children was awarded jointly to the paternal aunts. It is insisted that as between her and the aunts, the mother is entitled to the custody and control of the children, and that the judgment should be reversed.

The trial resulting in the award of the custody of the children to the father was had but a short time before appellant filed her petition against the father and his two sisters. There was no change in the condition of the parties, unless it can be said that the father's actual induction into the Army of the United States altered the situation in respect to the care of the children; but we think it did not. At the time the children were awarded to the father, it was known that he would be called into the armed service, and that the aunts of the children would continue, as they had for the previous four years, to have actual charge of educating and rearing the children. If appellant was entitled to any relief, the proper procedure would have been by appeal from the decision in that case. It follows that the petition should have been dismissed as to the father. The judgment of the court awarding the custody and control of the children to the aunts, technically construed, is erroneous; but it cannot be construed to have the effect of taking the custody and control from the father. In effect, it is merely an approval of the court of the method and manner of the exercise of the custody and control previously awarded the father, and from which decree no appeal has been taken. If the effect of the judgment could be construed to dispossess the father of the rights he acquired under the previous order of the court, appellant could not complain, because she has clearly demonstrated that she is not entitled to have that decree set aside. The only person who has demon-

strated a right to complain is the father of the children, who actually is not before the court, or at least has not appealed from the judgment. We therefore construe the judgment appealed from to have the effect merely of approving the manner and method the father has elected to exercise the care and custody of the children under the former judgment of the court, for such period of time as he shall remain in the service of the armed forces of his country.

The judgment, so construed, is affirmed.